UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| TULSA ATHLETICS, LLC, ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No. 24-CV-194-CVE-SH |
| ) | |
| NATIONAL PREMIER SOCCER ) | |
| LEAGUE, INC., CINDY SPERA, and ) | |
| KENNETH FARRELL, ) | |
| ) | |
| **Defendants.** ) | |

## OPINION AND ORDER

Now before the Court is Plaintiff's Motion for Preliminary Injunction and Brief in Support (Dkt. # 8).  Tulsa Athletics, LLC (the Athletic) is a member of the National Premier Soccer League, Inc. (NPSL), and the Athletic filed this case after the NPSL refused to allow the Athletic to play home games at its chosen venue, Athletic Community Field at Hicks Park (Athletic Field).  The Athletic argues that the NPSL has failed to offer any credible explanation for denying approval of the Athletic's chosen venue, and the Athletic asks the Court to enter a preliminary injunction allowing the team to use this venue for home games while the case is pending.[1]  The NPSL responds that the Athletic has failed to show a likelihood of success on the merits or irreparable harm from the NPSL's actions, and NPSL also asserts procedural objections in opposition to the Athletic's motion for preliminary injunction.

---

[1]  The Court has not held a hearing on plaintiff's motion for preliminary injunction, and the findings in this opinion and order are based on the factual allegations of plaintiff's petition and documents attached to the parties' briefing on the motion for preliminary injunction. Due to the limited record, the Court does not view its summary of the facts as binding or final in terms of future proceedings, and the parties may offer additional or contrasting facts based on the evidence as the case proceeds.

I.

The Athletic is an amateur soccer club based in Tulsa, Oklahoma, and the Athletic is owned by Tulsa Athletics, LLC. The individual owners of the limited liability company are Dr. Thomas Kern and Vincent Dalesandro. Dkt. # 2-1, at 3-5. The Athletic belongs to the NPSL, which is organized as a not-for-profit corporation under Delaware law. Cindy Spera is the managing director of the NPSL and Kenneth Farrell is the chair of the NPSL's board of directors. Id. at 5. The Athletic has been a member of the NPSL since 2013, and the team has had difficulty securing an appropriate venue during its tenure in the NPSL. From 2013 to 2016, the Athletic played home games at Drillers Stadium, which was formerly the home stadium for a minor league baseball team. Id. at 7. However, Drillers Stadium was demolished after the 2016 season and was no longer available as a venue, and the Athletic played the next season at a local high school soccer field. Id. The Athletic played the following three seasons at Veterans Park in Tulsa, which was an open park that lacked on-site facilities. Id. Veterans Park did not meet the minimum requirements for a soccer stadium under NPSL rules, but the Athletic received a waiver from the NPSL allowing the team to play at Veterans Park. Id. The Athletic alleges that waivers for venues that are non-compliant with NPSL rules are commonly granted by the NPSL. Id.

The Athletic continued to search for a permanent field that would satisfy the venue requirements of the NPSL. A stadium must meet the following requirements:

- Closed Stadium (not an open park or a park with temporary enclosures)
- Seating for five hundred (500) people
- Field size measuring a minimum of 65 yards x 110 yards and a maximum of 80 yards x 120 yards
- Locker room for visiting teams

- Showers onsite for visiting team

- Referee locker room/changing area (proper indoor space, not an outside tent/shed/storage fixture; space must not require officials to walk through teams' locker rooms)

- Accessible Press Box with power outlets and shelter from rain

- WiFi access in Press Box

- Stadium lights

- Electronic scoreboard and working time clock

- Ample sideline space for team benches

- Working PA system

Dkt. # 8-1, at 3. The Athletic identified Hicks Park in east Tulsa as a potential venue, because it met most of the stadium requirements under NPSL rules. Id. at 9. Hicks Park is fully enclosed with a chain link fence and has a single point of entry, and the Athletic obtained an exclusive license from the City of Tulsa for use of the field. Id. The Athletic has expanded the bleachers to accommodate up to 650 fans and has installed permanent railings to separate spectators from the field. Id. The field is also equipped with a press box in the form of repurposed shipping containers, and the press box is fully connected to electricity and WiFi. Id. at 9-11.

The Athletic renamed the field as Athletic Field, and the NPSL initially approved use of the field as the Athletic's home field for the 2022 season. Id. at 11. However, the NPSL revoked its approval following the Athletic's first playoff game in July 2022, and the NPSL accused the Athletic of playing in an "open park." Id. The Athletic was forced to play its next playoff game at a local middle school, and the Athletic states that it attempted to work with the NPSL to determine how Athletic Field could be improved for the 2023 season. Id. The Athletic claims that the NPSL

showed "no genuine interest in evaluating the field or addressing any legitimate concerns," but the Athletic made additional improvement to the field in preparation for the 2023 season. Id. at 11. The Athletic hosted two home games at Athletic Field as part of the U.S. Open Cup, and the field had been approved for use by United States Soccer and the Oklahoma Soccer Association before the games took place. Id. at 13. The Athletic alleges that the venue requirements for the U.S. Open Cup are substantially similar to the venue requirements of the NPSL, and the Athletic sent copies of the U.S. Open field evaluations to the NPSL. Id. The NPSL refused to reconsider its decision that Athletic Field was deficient, and the NPSL again referred to the field as an "open park." Id. The Athletic was required to find an alternate venue for the 2023 season, and it played its home games at Rogers State University in Claremore, Oklahoma. Id. In May 2023, the Women's Premier Soccer League conducted a site evaluation of Athletic Field after the Athletic expressed interest in forming a team for that league, and the venue was approved for use in WPSL matches. Id. at 115.

The Athletic filed two appeals to professional soccer organizations of the NPSL's decision to prohibit the Athletic from using Athletic Field for home games. On May 23, 2023, the Athletic filed an appeal with the United States Adult Soccer Association (USASA), arguing that its request to use Athletic Field should have been approved by the NPSL. Id. at 119. The appeal was denied for lack of jurisdiction, because the appeal concerned a dispute over internal league rules, rather than an alleged violation of the rules of the USASA. Id. at 187. The Athletic filed a second appeal to the United States Soccer Federation (USSF), which was also dismissed for lack of jurisdiction. Id. at 225.

On February 28, 2024, the Athletic again sought approval from the NPSL to use Athletic Field for its home games. The Athletic alleges that one of its owners, Dr. Kern, was told by

4

members of the NPSL's board of directors that a site visit would take place, but NPSL management allegedly instructed board members not to conduct a site visit. Id. at 17. On March 6, 2024, the NPSL denied the Athletic's request to use Athletic Field for home games without conducting a site visit, and the short denial letter simply states that the NPSL had previously rejected and denied the Athletic's request. Dkt. # 2-1, at 231.

On April 1, 2024, the Athletic filed this case in Tulsa County District Court, alleging claims of breach of contract, breach of the implied covenant of good faith and fair dealing, promissory estoppel, breach of fiduciary duty, tortious interference with business and contractual relationships, and tortious interference with prospective economic advantage. The Athletic named the NPSL, Spera, and Farell as defendants, and the Athletic seeks temporary and permanent injunctive relief, a declaratory judgment, and money damages. Defendants NPSL and Spera removed the case to this court and, on April 30, 2024, the Athletic filed a motion for preliminary injunction asking the Court to enjoin the NPSL from prohibiting the Athletic from playing home games at Athletic Field. Dkt. # 8. The Court held a status conference on May 9, 2024, and counsel for plaintiff and defendants appeared at the hearing. The Court set a briefing schedule for plaintiff's motion for preliminary injunction, and both sides expressed interest in resolving the case without further judicial intervention. Dkt. # 18.

Following the status conference, the NPSL suspended the Athletic for the 2024 season without providing any explanation for the suspension. Dkt. # 29-1. The entire official statement of the NPSL stated that "Tulsa Athletic's NPSL membership has been suspended, and the club will not participate in the league's 2024 season." Id. The USASA had previously selected the Athletic to host the Steinbrecher Cup, which the Athletic describes as a "competition between the reigning

5

National Amateur Cup champion, the NPSL champion, the USL Two champion and the previous year's Steinbrecher champion." Dkt. # 30, at 4. However, the Steinbrecher Cup notified the Athletic that it would no longer be permitted to host the event. Id. The Steinbrecher Cup had contacted the NPSL office after learning that the Athletic had been suspended for the 2024 season, and the NPSL office told the Steinbrecher Cup that the Athletic was in "bad standing" with the league. Dkt. # 30-1, at 6. The NPSL also contacted the Athletic's players and encouraged the players to find another team for the 2024 season. Dkt. # 30-1, at 7. The NPSL offered to help the Athletic's players find a new team, and provided a link to a form for players who were interested in switching teams. Id.

## II.

Plaintiff argues that it is likely to succeed on the merits of its claims, because the NPSL's decision to prohibit the Athletic from using Athletic Field for the 2024 season is "arbitrary, capricious, irrational, or in bad faith." Dkt. # 8, at 14-19. Plaintiff fails to link this argument to a specific claim asserted in its petition and, instead, generally argues that the state courts of Oklahoma have intervened in disputes between sports associations and individual teams to prevent arbitrary and bad faith enforcement of association rules. Id. Plaintiff claims that it has been irreparably harmed by defendants' conduct due to its inability to play previously scheduled games, loss of income, and loss of goodwill with the community. Id. at 20-21. Defendants raise a procedural argument that the Court must refrain from considering plaintiff's motion for a preliminary injunction, because Farrell has not been served with process. Dkt. # 29, at 7. Defendants also claim that the motion for preliminary injunction is moot in light of the NPSL's decision to suspend plaintiff for the 2024 season. Id. at 8.

A.

Defendants NPSL and Spera argue that the Court lacks the authority to consider plaintiff's motion for a preliminary injunction, because Farrell has not been served with process. Dkt. # 29, at 7. Defendants rely on two unpublished Tenth Circuit decisions for the proposition that all parties named as defendants must be served before injunctive relief can be entered against any defendant. See Beierle v. Zavares, 215 F.3d 1336, 2000 WL 757725, *6 (10th Cir. 2000); Cooper v. Simmons, 66 F.3d 338, 1995 WL 541625, *2 (10th Cir. Sep. 13, 1995). Plaintiff responds that notice of a motion for preliminary injunction, rather than formal service of process, is all that is required for a Court to grant injunctive relief against a party. Dkt. # 30, at 5.

The cases cited by defendants do not support the specific argument they advance, and the cases more generally support the undisputed and well established principle that injunctive relief cannot be entered without notice to the defendant against whom the Court imposes injunctive relief. Both Beierle and Cooper involve cases in which unrepresented and incarcerated plaintiffs sought injunctive relief against prison officials without first serving a copy of the motion for preliminary injunction on the defendants. Nothing in either decision suggests that a district court lacks the authority to hear a motion for preliminary injunction against defendants who have actually been served with process merely because there is also an unserved defendant. In this case, the NPSL and Spera have filed answers and they have responded to the motion for preliminary injunction. The Court has reviewed the docket sheet, and counsel for defendants received electronic notice of the motion for preliminary injunction on the date it was filed. The docket sheet does not contain a return of service that Farrell has been served or show that he received a copy of the motion for preliminary injunction, and the Court will refrain from considering whether it would be appropriate to order

injunctive relief against him. However, defendants NPSL and Spera have not shown that this wholly deprives the Court of jurisdiction over plaintiff's motion for preliminary injunction, and the Court will consider whether injunctive relief is appropriate against the NPSL and Spera.

**B.**

Defendants argue that plaintiff's motion for preliminary injunction is moot in light of the NPSL's decision to suspend the Athletic for the 2024 season. Dkt. # 29, at 8. Plaintiff responds that the NPSL failed to provide an explanation for the suspension, and the basis for the suspension was presumably the lack of a league-approved venue for home games. Dkt. # 30, at 6. The Court agrees with plaintiff that the motion for preliminary injunction is not moot due to the unexplained suspension of the Athletic's 2024 season. The notice of suspension provided to the Athletic states in its entirety:

> Tulsa Athletic is suspended from the NPSL for the 2024 season, effective immediately. The language in the below graphic will be released on the league's timeline, likely this afternoon.
>
> The schedule that was submitted to the league by the Heartland conference is not approved and therefore the games involving Tulsa Athletic, including the game submitted for this weekend 5/19, are not happening.

Dkt. # 29-1. If the NPSL had suspended the Athletic for another reason, such as non-payment of dues or violation of another league rule, it is possible that the motion for preliminary injunction could have become moot. However, the notice fails to explain the basis for the suspension and this supports the Athletic's position that the basis for the suspension was likely the lack of an approved venue. Only the NPSL is in possession of additional evidence in support of its decision to suspend the Athletic for the 2024 season, and it has failed to provide that evidence with its response. The most reasonable inference based on the evidence and arguments presented to the Court is that the

basis for the suspension is the venue dispute between the NPSL and the Athletic. The NPSL's decision to suspend the Athletic does not render the motion for preliminary injunction moot, and the Court will consider the merits of plaintiff's arguments.

## C.

Plaintiff argues that the NPSL's decision to prevent the Athletic from playing home games at Athletic Field is arbitrary and capricious, and plaintiff asks the Court to issue a preliminary injunction allowing plaintiff to play home games at Athletic Field until the conclusion of this case. The NPSL responds that plaintiff's general references to Oklahoma law do not show that plaintiff has any likelihood of success on the merits. The NPSL also contends that no irreparable harm will result from the denial of plaintiff's motion, but the NPSL's reputation will be tarnished if plaintiff is permitted to host home games at a venue that fails to comply with league standards.

A preliminary injunction is an "extraordinary equitable remedy designed to 'preserve the relative positions of the parties until a trial on the merits can be held.'" Westar Energy, Inc. v. Lake, 552 F.3d 1215, 1225 (10th Cir. 2009) (quoting Univ. Of Tex. v. Camenisch, 451 U.S. 390, 395 (1981)). To be entitled to a preliminary injunction, the moving party must establish the following:

> (1) a substantial likelihood of success on the merits of the case; (2) irreparable injury to the movant if the preliminary injunction is denied; (3) the threatened injury to the movant outweighs the injury to the other party under the preliminary injunction; and (4) the injunction is not adverse to the public interest.

Kikumura v. Hurley, 242 F.3d 950, 955 (10th Cir. 2001). "Because a preliminary injunction is an extraordinary remedy, the right to relief must be clear and unequivocal." Utah Licensed Beverage Ass'n v. Leavitt, 256 F.3d 1061, 1066 (10th Cir. 2001) (quoting SCFC ILC, Inc. v. Visa USA, Inc., 936 F.2d 1096, 1098 (10th Cir. 1991)); see also Mazurek v. Armstrong, 520 U.S. 968, 972 (1997)

9

("It is frequently is observed that a preliminary injunction is an extraordinary remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion.").

**Irreparable Harm**

The Tenth Circuit has stated that "probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction," and the "moving party must demonstrate that such injury is likely before the other requirements will be considered." DTC Energy Group, Inc. v. Hirschfeld, 912 F.3d 1263, 1270 (10th Cir. 2018). "Proving irreparable harm . . . is not 'an easy burden to fulfill,'" and the moving party must show "a significant risk that he or she will experience harm that cannot be compensated after the fact by money damages." Husky Ventures, Inc. v. B55 Investments, Ltd., 911 F.3d 1000, 1011 (10th Cir. 2018). "Purely speculative harm will not suffice," and the plaintiff must show that the threatened harm is likely to occur before the district court rules on the merits of the case." RoDa Drilling Co. v. Siegal, 552 F.3d 1203, 1210 (10th Cir. 2009). The Tenth Circuit has summarized its precedent as to irreparable harm to require that the moving party's injury "must be both certain and great, and that it must not be merely serious and substantial." Dominion Video Satellite, Inc. v. Echostar Satellite Corp., 356 F.3d 1256, 1262 (10th Cir. 2004).

Plaintiff argues that it will not be able to make up games lost due to defendants' refusal to allow plaintiff to play home games at Athletic Field, and the inability to play the 2024 NPSL season will result in loss of reputation and goodwill in the community for the Athletic. Dkt. # 8, at 20. Plaintiff also claims that defendants' conduct has interfered with the Athletic's ability to schedule matches against non-NPSL opponents, because defendants have engaged in bad faith and retaliatory misconduct based on plaintiff's decision to file a lawsuit. Dkt. # 30, at 12. Defendants respond that plaintiff took a "gamble" by attempting to schedule home games at Athletic Field for the 2024

season, even though it had already been denied permission by the NPSL to play home games at the same field in 2023. Dkt. # 29, at 18.

The Court finds that money damages will be insufficient to compensate plaintiff for the harm caused by defendants' conduct, because plaintiff has demonstrated a substantial risk that it will be unable to continue as a soccer team absent a court ruling allowing plaintiff to play home games at Athletic Field. Plaintiff's motion for preliminary injunction was filed on April 30, 2024 and, at the time, plaintiff's injury was based solely on the NPSL's decision not to allow plaintiff to play home games at Athletic Field. The loss of income from home games and the potential loss of goodwill in the community likely would not have been a sufficient basis for the Court to find that plaintiff would suffer irreparable harm. The Court also held a status conference on May 9, 2024, and counsel for both sides represented that they would be engaging in good faith negotiations to resolve the venue dispute giving rise to this case. However, since the filing of the original motion, the NPSL has since suspended the Athletic for the 2024 season and the NPSL has actively encouraged the Athletic's players to play for other teams. The NPSL has also made disparaging statements about the Athletic to the Steinbrecher Cup, and the Athletic lost the opportunity to host an event that in no way impacted the NPSL. This additional evidence strongly supports an inference that the NPSL's conduct goes beyond a simple dispute over the suitability of Athletic Field as a venue under NPSL rules, and the NPSL's conduct raises a legitimate concern that the Athletic will no longer be able to continue as a team until the conclusion of this case. It is one matter for the NPSL to exercise its authority over a member team in the application of NPSL rules, but the NPSL has interfered with the Athletic's ability to schedule games outside of the NPSL and even maintain its contracts with its players. The Court notes that a plaintiff's burden to show irreparable harm is substantial, but

plaintiff has identified a serious, non-speculative injury that will likely result prior to the conclusion of this case. Based on the record before the Court, plaintiff will likely be able to show that it will suffer irreparable harm absent the issuance of a preliminary injunction.

**Likelihood of Success on the Merits**

Plaintiff relies on Oklahoma law to support its argument that the Court can intervene in a dispute between a member team and a sports league, and plaintiff argues that the Court can set aside a decision by a sports league that is arbitrary, capricious, irrational, or made in bad faith. Oklahoma law does not permit courts to interfere with the activities of a voluntary association unless the association has interpreted its own rules "in an unreasonable or arbitrary manner, not in good faith or in violation of the law of the land." Manuel v. Oklahoma City University, 833 P.2d 288, 292 (Okla. Civ. App. 1992). In fact, courts should give deference to the decisions of voluntary associations, such as sports leagues, as to interpretation and enforcement of internal rules. Scott v. Oklahoma Secondary School Activities Assoc., 313 P.3d 891, 896 (Okla. 2013).

Plaintiff's reliance on general Oklahoma law concerning court involvement in a dispute between a team and sports league does not tend to show that plaintiff is likely to succeed on any of its claims. Plaintiff's breach of contract claim is based on an alleged breach of the NPSL bylaws, specifically the bylaw describing the managing director's duties and powers. The cited bylaw requires the managing director to carry out the following duties:

A. Management of the league's day to day operations in the active and off season;

B. Enforcing the League rules;

C. Providing the platform for hearing appeals and protests;

D. Encouraging growth in League membership; and

    E. Fostering goodwill among the greater community of US Soccer.

Dkt. # 2-1, at 253. The bylaws of the NPSL expressly state that "[a]ll words, terms, and provisions of these Bylaws shall be interpreted and defined by and in accordance with Delaware [l]aw." Id. at 275. Under Oklahoma or Delaware law, bylaws can give rise to a contractual obligation between members of an organization that can form the basis for a breach of contract claim. Strougo v. Hollander, 111 A.3d 590, 597-98 (Del. Ch. 2015); State ex rel. Oklahoma Bar Assoc. v. Gasaway, 863 P.2d 1189, 1193-94 (Okla. 1993). Bylaws are interpreted using ordinary principles of contract interpretation. Kellner v. AIM ImmunoTech Inc., 307 A.3d 998, 1037 (Del. Ch. 2023).

  Plaintiff claims that the managing director of the NPSL, Spera, has breached the "[e]nforcing the League rules" subsection of this provision by arbitrarily and capriciously finding that Athletic Field fails to satisfy the league's stadium or venue rules. Defendants argue that plaintiff wholly fails to tie these general arguments to any specific legal claim asserted in plaintiff's petition and, therefore, plaintiff has not shown that it has any likelihood of success on any of its claims. Dkt. # 29, at 10. Plaintiff responds that the same conduct of arbitrarily and capriciously prohibiting the Athletic from using its selected venue underlies all of plaintiff's claims but, in its reply, plaintiff focuses on its breach of contract claim as the primary basis to show likelihood of success on the merits. Dkt. # 30, at 7-8. Plaintiff does not specifically analyze any other claim as the potential basis for finding a likelihood of success on the merits, and the Court will focus its analysis of the likelihood that plaintiff can prevail on its breach of contract claim in its review of plaintiff's motion for preliminary injunction.

  Before considering whether plaintiff is likely to succeed on a breach of contract claim, the Court must first determine whether Oklahoma or Delaware law applies to plaintiff's contract claim.

Plaintiff argues that the NPSL bylaws "refer" to Delaware law, "but Oklahoma law should govern this case because the Athletic operate[s] in Oklahoma with approval of the NPSL." Dkt. # 8, at 15 n.6.  In a diversity case, a federal district court applies the choice of law rules of the forum state. Pepsi-Cola Bottling Co. of Pittsburgh, Inc. v. PepsiCo., Inc., 431 F.3d 1241, 1255 (10th Cir. 2005). Under Oklahoma law, parties are free to specify the rules under which a contract will be enforced, and a choice law provision will be enforced unless the contractual provision is illegal or contrary to the law or public policy of Oklahoma.  Berry and Berry Acquisitions, LLC v. BFN Properties LLC, 416 P.3d 1061, 1068 (Okla. 2018).  The mere fact that a foreign party contracts with another party who happens to be located in Oklahoma does not negate a choice of law or venue provision in a contract, and applying the law of another state is not inherently against the public policy of Oklahoma.  Victory Energy Operations, LLC v. Rain CII Carbon, LLC, 335 P.3d 809, 813 (Okla. Civ. App. 2014).  Plaintiff has made no attempt to show that applying Delaware contract law would violate the public policy of Oklahoma.  Plaintiff also cannot selectively rely on the NPSL bylaws as the basis for its contract claim and ignore provisions that it finds less favorable.  The Court will apply Delaware law to plaintiff's breach of contract claim arising under the NPSL bylaws.

Even though the Court will apply Delaware law, it is unlikely that the choice of law will have a substantial effect on the Court's ruling on plaintiff's motion for preliminary injunction.  The elements of a breach of contract claim are identical under Oklahoma and Delaware law.  To prevail on a breach of a contract claim, a plaintiff must show the parties formed a contract, that the defendant breached the contract, and that plaintiff suffered damages as a result of the breach.  Linn v. Oklahoma Farm Bureau Mut. Ins. Co., 479 P.3d 1013, 1022-23 (Okla. Civ. App. 2020); Connelly v. State Farm Mut. Auto. Ins. Co., 135 A.3d 1271, 1279 n.28 (Del. 2016). Plaintiff argues that the

NPSL bylaws obligate the managing director to fairly enforce league rules, including the rules concerning venue requirements that are posted on the NPSL's website. Dkt. # 30, at 8-9. According to plaintiff, Athletic Field meets all of the venue requirements under NPSL rules, and the Athletic asks the Court to infer that the NPSL's denial of the Athletic's chosen venue is the result of bad faith or personal animus.  In a footnote, plaintiff claims that its owners reported to the NPSL board of directors that Farrell and Spera had engaged in "inappropriate behavior," and the Athletic claims that the NPSL began to treat the Athletic differently the season after its owners made this allegation. Dkt. # 8, at 9 n.2.  Defendants argue that the venue rules that are the subject of the parties' dispute are not part of the bylaws and have not been incorporated into the bylaws. Dkt. # 29, at 13-14. Defendants argue that it cannot be in breach of the bylaws even if Athletic Field meets the NPSL's venue requirements, because the NPSL retains "a large amount of discretion" to consider whether approval of the venue would be in the best interest of the league.[2]  Id. at 15.

The Court finds that it is unnecessary to consider whether Athletic Field actually meets the NPSL's venue requirements, because the bylaw on which plaintiff relies is simply too vague to form

---

[2]  The Court finds that is unnecessary reach defendants' argument concerning its discretionary authority, but the existence of discretionary authority would not automatically end the Court's inquiry into the NPSL's venue decision.  Plaintiff would be permitted to offer evidence concerning how defendant exercised its discretion and the factual basis upon which the NPSL's decision was made.  Relevant factors might include the evidence available to defendants when they initially determined the Athletic Field was an "open park," and this could include evidence from any site visit conducted by the NPSL or records explaining the internal decision making process.  Plaintiff could produce evidence concerning the types of venues that have been approved or rejected by the NPSL, including whether the NPSL granted waivers of the venue requirements to other teams.  If the Court finds that the NPSL retains some discretion, the Court's inquiry will focus on whether there was a decision-making process and that nature of the process, and evidence that the NPSL's decision was arbitrary or motivated by personal animus will be relevant to the Court's ruling in this case.

the basis for a contract between the parties.[3] The cited bylaw concerns the general powers and duties of the managing director of the NPSL, but the bylaw does not create a specific rule that is capable of easy or direct enforcement. Plaintiff seems to be arguing that the NPSL is obligated to apply any rule applicable to the league and its teams in good faith and, should any team disagree with the NPSL's decision, the bylaw allows any team to bring a breach of contract claim alleging that the decision was made in bad faith. The terms of a contract must be sufficiently concrete that a reviewing court can determine what the parties agreed to and if a breach occurred. Eagle Force Holdings, LLC v. Campbell, 187 A.3d 1209, 1232 n.160 (Del. 2018); Dunn v. Dunn, 391 P.2d 885, 887 (Okla. 1964). Plaintiff's theory in support of its breach of contract claim would simply turn into an inquiry concerning whether the NPSL acted in bad faith when enforcing some rule other than the bylaw actually creating the alleged contract, and this standard is not sufficiently concrete to allow for judicial enforcement of an alleged contract between the parties. Plaintiff's briefing is primarily focused on defendants' alleged bad faith in enforcing the NPSL's venue requirements, but the Court is focused on the existence and nature of the alleged contract between the parties. Bad faith conduct on its own does not form the basis of a legal claim, especially a claim for breach of contract, and plaintiff must cite legal authority establishing the existence of a contract and a specific term of the contract that has been breached by defendants. Plaintiff has failed to establish that the cited bylaw creates an enforceable contract that is capable of judicial enforcement, and plaintiff has not shown a likelihood of success on its breach of contract claim. The Court declines to consider whether

---

[3]   The Court notes that the record is not sufficient for the Court to make a factual finding concerning whether Athletic Field actually complies with the NPSL's venue requirements. The Court would need objective evidence concerning Athletic Field, not simply assertions by plaintiff or defendants that Athletic Field does or does not meet the venue requirements, and the record is lacking sufficient objective evidence for the Court to make such a finding.

plaintiff is likely to succeed on any other claim, because this issue has not been adequately briefed by the parties.

**Balance of Interests**

The parties dispute whether the NPSL could potentially be injured by the issuance of a preliminary injunction allowing the Athletic to play home games at its chosen venue. Plaintiff argues that Athletic Field meets or exceeds the NPSL's venue requirement, and there is no possibility that the league can be harmed if the Court enters an injunction allowing the Athletic to play games at its chosen field. Defendants respond that allowing the Athletic to play home games on a "subpar field would harm the NPSL's improving brand and diminish the impression success and quality the league is striving to project." Dkt. # 29, at 19. The parties have been advised that it would be premature for the Court to consider whether Athletic Field complies with the NPSL's venue requirements. Therefore, the arguments asserted by the parties are not helpful in determining whether the plaintiff's threatened injury outweighs the risk of injury to defendants, and this factor is neutral.

**Risk of Harm to Public**

The NPSL argues that the public will be harmed by allowing the Athletic to use Athletic Field based on plaintiff's "misguided contractual analysis," and the NPSL argues that the physical safety of fans will be at risk due to plaintiff's failure to protect fans from "soccer balls kicked at high speeds by professional soccer players." Dkt. # 29, at 19. Plaintiff responds that it should be permitted to fulfill its public interest mission of providing soccer to the city of Tulsa and the East Tulsa community, and the public will be harmed if it is impeded in this mission by arbitrary enforcement of league rules. Dkt. # 8, at 22. The Court finds that this factor is neutral. There is no

significant risk of injury to the public from either granting or denying the requested injunction, and the alleged injury that would be suffered by plaintiff is private in nature.

**Conclusion**

Considering all of the factors, the Court finds that plaintiff's motion for a preliminary injunction (Dkt. # 8) should be denied. Plaintiff has made a substantial showing that it will be irreparably harmed absent the issuance of a preliminary injunction, but the remaining factors are either unsatisfied or neutral. The Court notes that substantial actions giving rise to the potential for irreparable harm occurred after plaintiff's motion for preliminary injunction had been filed, and the record does not provide an adequate factual basis for the Court to evaluate the parties' arguments concerning the venue dispute. The Court leaves open the possibility of the renewal of plaintiff's motion for preliminary injunction if the evidentiary problems can be cured and plaintiff can identify a viable theory of recovery against defendants NPSL and Spera.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Preliminary Injunction and Brief in Support (Dkt. # 8) is **denied**.

**DATED** this 29th day of July, 2024.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE